# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLAUDIA HERNANDEZ,<br><br>   Petitioner,<br><br>   v.<br><br>RON RACKLEY,<br><br>   Respondent. | No. 2:18-CV-0020-DMC-P<br><br>MEMORANDUM OPINION AND ORDER |

Petitioner, a state prisoner proceeding pro se, brings this petition for a writ of habeas corpus pursuant to 28 U.S.C. § 2254. Pursuant to the written consent of all parties (ECF Nos. 5 and 14), this case is before the undersigned judge for all purposes, including entry of a final judgment. See 28 U.S.C. § 636(c). Pending before the court are Petitioner's petition for a writ of habeas corpus (ECF No. 1) and Respondent's answer (ECF No. 18).

///
///
///
///
///
///
///

1

# I. BACKGROUND

A. <u>Facts</u>[1]

Petitioner entered a no contest plea and stipulated that the factual basis for her plea was provided by her preliminary hearing. <u>See</u> ECF No. 19, Lod. Doc. 8, pgs. 7-8. The state court relied on the facts found in the preliminary hearing and Petitioner's plea agreement to make its determination. <u>See</u> ECF No. 19, Lod. Doc. 3, pgs. 3-4. Petitioner has not offered any clear and convincing evidence to rebut the presumption that these facts are correct. The following is a summation of the incident as described by witnesses at the preliminary hearing:

Petitioner and her husband, codefendant Mr. Danny Garza, shared a residence with the victim Mrs. Sandy Patterson. <u>See</u> ECF No. 19, Lod. Doc. 8, Preliminary Hearing Transcript, pgs. 15-17, 146, 188-190, 359-360, 362. On September 20, 2013, Petitioner and her husband were driven back to their shared residence by Petitioner's brother. <u>See</u> id. at 12-16, 329. Petitioner and her husband argued with Mrs. Patterson about money that Mrs. Patterson owed Mr. Garza. <u>See</u> id. at 18-23, 27, 87-88, 147, 191-193, 228, 256-257, 329-330, 336, 362. The argument became physical and Mr. Garza placed his arm across either Mrs. Patterson's chest or throat, choking her. <u>See</u> id. at 23-26, 28, 90, 149-150, 193, 195-198, 208, 256-258, 336. At some point, while Mr. Garza was choking Mrs. Patterson, Petitioner said, "no, no, Danny don't." <u>See</u> id. at 258-259. Mrs. Patterson stated, "just kill me," and Mr. Garza responded, "we can do that," before going into the kitchen and grabbing a knife. <u>See</u> id. at 196-197, 203-204, 264, 337, 362.

While Mr. Garza retrieved the knife, Petitioner and Mrs. Patterson began fighting. <u>See</u> ECF No. 19, Lod. Doc. 8, Preliminary Hearing Transcript, pgs. 155, 198, 259, 336, 338, 375. At some point Mrs. Patterson fell to the floor. <u>See</u> id. at 177, 199-200. While she was on the floor, Petitioner continued punching and kicking her and pulling out Mrs. Patterson's hair. <u>See</u> id. at 177, 199-200, 265, 350, 375-376. There was blood on the floor and the walls. <u>See</u> id. at

---

[1] Pursuant to 28 U.S.C. § 2254(e)(1), ". . . a determination of a factual issue made by a State court shall be presumed to be correct." Findings of fact in the last reasoned state court decision are entitled to a presumption of correctness, rebuttable only by clear and convincing evidence. <u>See</u> Runningeagle v. Ryan, 686 F.3d 759 n.1 (9th Cir. 2012). Petitioner bears the burden of rebutting this presumption by clear and convincing evidence. <u>See</u> id. These facts are, therefore, drawn from the state court's opinion(s), lodged in this court. Petitioner may also be referred to as "defendant."

1  155, 201, 260.  Mrs. Patterson tried to get the other people in the house to call the police.  See id.
2  at 150, 201-202.  To cover Mrs. Patterson's screams Mr. Garza turned on either the radio or the
3  television and closed the blinds.  See id. at 150-151, 341.  Bags were placed in Mrs. Patterson's
4  mouth to prevent her from screaming.  See id.  at 151, 376.
5           On September 23, 2013, Mr. Garza loaded what he said was trash that needed to
6  be thrown away into the trunk of a car being driven by Petitioner's brother.  See ECF No. 19,
7  Lod. Doc. 8, Preliminary Hearing Transcript, pgs. 38-39, 41-42, 91-97, 332, 338.  Mr. Garza
8  directed Petitioner's brother to drive him to pick up an associate.  See id. at 44-45, 113-114, 330-
9  331.  They then drove to a gas station, where they filled a gas can with gasoline, and Mr. Garza's
10 associate left.  See id. at 45, 54, 113-114, 330-331.  Mr. Garza then directed Petitioner's brother to
11 an obscure industrial area near warehouses.  See id. at 46-47, 114, 331-332.  Mr. Garza removed
12 what he had loaded into the trunk of the car, and placed it in a dumpster, before setting the
13 contents of the dumpster on fire.  See id. at 48-52, 54, 114, 338-339.  Mrs. Patterson's remains
14 were later found in a dumpster in an industrial area, burned so badly the coroner was unable to
15 determine a precise cause of death.  See id. at 277-288, 290-292, 315-318.  It was determined by
16 the coroner that Mrs. Patterson was dead prior to being burned.  See id. at 282-283.
17          **B.**     **Procedural History**
18          The amended information was deemed an information on May 11, 2016, and
19 charged Petitioner, Claudia Hernandez, with murder (Pen. Code, § 187, subd. (a)).  See ECF No.
20 19 Lod. Doc. 8, pgs. 32, 424-425.  On August 17, 2016, Petitioner pleaded no contest to
21 voluntary manslaughter (Pen. Code, § 193, subd. (a)), with the prior preliminary hearing
22 transcripts, taken between January 20, 2016, and May 11, 2016, stipulated to as the factual basis
23 for her plea.  See ECF No. 19 Lod. Doc. 8, pgs. 6-7.  On September 30, 2016, Petitioner was
24 sentenced to 6 years in prison.  See ECF No. 19, Lod. Doc. 1, pgs. 16-18.  Petitioner sought relief
25 by way of habeas petition, filed in the Sacramento County Superior Court, on July 17, 2017.  See
26 ECF No. 19, Lod. Doc. 2.  On September 8, 2017, the Sacramento County Superior Court denied
27 the habeas petition.  See ECF No. 19, Lod. Doc. 3.  Petitioner then sought to petition the
28 California Court of Appeal on October 2, 2017.  See ECF No. 19, Lod. Doc. 4.  The California

1  Court of Appeal denied the habeas petition on October 20, 2017.  See ECF No. 19, Lod. Doc. 5.
2  On November 1, 2017, Petitioner filed a writ of habeas corpus in the California Supreme Court.
3  See ECF No. 19, Lod. Doc. 6.  The California Supreme Court denied the petition on December
4  13, 2017.  See ECF No. 19, Lod. Doc. 7.  Petitioner then filed the present petition for writ of
5  habeas corpus on December 21, 2017.  See ECF No. 1.

## II.  STANDARDS OF REVIEW

Because this action was filed after April 26, 1996, the provisions of the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA") are presumptively applicable. See Lindh v. Murphy, 521 U.S. 320, 336 (1997); Calderon v. United States Dist. Ct. (Beeler), 128 F.3d 1283, 1287 (9th Cir. 1997), cert. denied, 522 U.S. 1099 (1998).  The AEDPA does not, however, apply in all circumstances.  When it is clear that a state court has not reached the merits of a petitioner's claim, because it was not raised in state court or because the court denied it on procedural grounds, the AEDPA deference scheme does not apply and a federal habeas court must review the claim de novo.  See Pirtle v. Morgan, 313 F.3d 1160 (9th Cir. 2002) (holding that the AEDPA did not apply where Washington Supreme Court refused to reach petitioner's claim under its "re-litigation rule"); see also Killian v. Poole, 282 F.3d 1204, 1208 (9th Cir. 2002) (holding that, where state court denied petitioner an evidentiary hearing on perjury claim, AEDPA did not apply because evidence of the perjury was adduced only at the evidentiary hearing in federal court); Appel v. Horn, 250 F.3d 203, 210 (3d Cir.2001) (reviewing petition de novo where state court had issued a ruling on the merits of a related claim, but not the claim alleged by petitioner).  When the state court does not reach the merits of a claim, "concerns about comity and federalism . . . do not exist." Pirtle, 313 F. 3d at 1167.

Where AEDPA is applicable, federal habeas relief under 28 U.S.C. § 2254(d) is not available for any claim decided on the merits in state court proceedings unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

4

> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

Under § 2254(d)(1), federal habeas relief is available only where the state court's decision is "contrary to" or represents an "unreasonable application of" clearly established law. Under both standards, "clearly established law" means those holdings of the United States Supreme Court as of the time of the relevant state court decision. See Carey v. Musladin, 549 U.S. 70, 74 (2006) (citing Williams, 529 U.S. at 412). "What matters are the holdings of the Supreme Court, not the holdings of lower federal courts." Plumlee v. Masto, 512 F.3d 1204 (9th Cir. 2008) (en banc). Supreme Court precedent is not clearly established law, and therefore federal habeas relief is unavailable, unless it "squarely addresses" an issue. See Moses v. Payne, 555 F.3d 742, 753-54 (9th Cir. 2009) (citing Wright v. Van Patten, 552 U.S. 120, 28 S. Ct. 743, 746 (2008)). For federal law to be clearly established, the Supreme Court must provide a "categorical answer" to the question before the state court. See id.; see also Carey, 549 U.S. at 76-77 (holding that a state court's decision that a defendant was not prejudiced by spectators' conduct at trial was not contrary to, or an unreasonable application of, the Supreme Court's test for determining prejudice created by state conduct at trial because the Court had never applied the test to spectators' conduct). Circuit court precedent may not be used to fill open questions in the Supreme Court's holdings. See Carey, 549 U.S. at 74.

In Williams v. Taylor, 529 U.S. 362 (2000) (O'Connor, J., concurring, garnering a majority of the Court), the United States Supreme Court explained these different standards. A state court decision is "contrary to" Supreme Court precedent if it is opposite to that reached by the Supreme Court on the same question of law, or if the state court decides the case differently than the Supreme Court has on a set of materially indistinguishable facts. See id. at 405. A state court decision is also "contrary to" established law if it applies a rule which contradicts the governing law set forth in Supreme Court cases. See id. In sum, the petitioner must demonstrate that Supreme Court precedent requires a contrary outcome because the state court applied the wrong legal rules. Thus, a state court decision applying the correct legal rule from Supreme

Court cases to the facts of a particular case is not reviewed under the "contrary to" standard.  See id. at 406.  If a state court decision is "contrary to" clearly established law, it is reviewed to determine first whether it resulted in constitutional error.  See Benn v. Lambert, 283 F.3d 1040, 1052 n.6 (9th Cir. 2002).  If so, the next question is whether such error was structural, in which case federal habeas relief is warranted.  See id.  If the error was not structural, the final question is whether the error had a substantial and injurious effect on the verdict, or was harmless.  See id.

State court decisions are reviewed under the far more deferential "unreasonable application of" standard where it identifies the correct legal rule from Supreme Court cases, but unreasonably applies the rule to the facts of a particular case.  See Wiggins v. Smith, 539 U.S. 510, 520 (2003).  While declining to rule on the issue, the Supreme Court in Williams, suggested that federal habeas relief may be available under this standard where the state court either unreasonably extends a legal principle to a new context where it should not apply, or unreasonably refuses to extend that principle to a new context where it should apply.  See Williams, 529 U.S. at 408-09.  The Supreme Court has, however, made it clear that a state court decision is not an "unreasonable application of" controlling law simply because it is an erroneous or incorrect application of federal law.  See id. at 410; see also Lockyer v. Andrade, 538 U.S. 63, 75-76 (2003).  An "unreasonable application of" controlling law cannot necessarily be found even where the federal habeas court concludes that the state court decision is clearly erroneous.  See Lockyer, 538 U.S. at 75-76.  This is because "[t]he gloss of clear error fails to give proper deference to state courts by conflating error (even clear error) with unreasonableness." Id. at 75.  As with state court decisions which are "contrary to" established federal law, where a state court decision is an "unreasonable application of" controlling law, federal habeas relief is nonetheless unavailable if the error was non-structural and harmless.  See Benn, 283 F.3d at 1052 n.6.

The "unreasonable application of" standard also applies where the state court denies a claim without providing any reasoning whatsoever.  See Himes v. Thompson, 336 F.3d 848, 853 (9th Cir. 2003); Delgado v. Lewis, 233 F.3d 976, 982 (9th Cir. 2000).  Such decisions are considered adjudications on the merits and are, therefore, entitled to deference under the AEDPA.  See Green v. Lambert, 288 F.3d 1081 1089 (9th Cir. 2002); Delgado, 233 F.3d at 982.

1  The federal habeas court assumes that state court applied the correct law and analyzes whether the
2  state court's summary denial was based on an objectively unreasonable application of that law.
3  See Himes, 336 F.3d at 853; Delgado, 233 F.3d at 982.

### III. DISCUSSION

Petitioner raises five grounds for relief based upon receiving ineffective assistance of counsel when her attorney did not object: (1) that the warrant for her arrest was invalid; (2) that the warrant for her arrest lacked requisite probable cause; (3) to statements in an investigative report; (4) to her statements made while detained; and (5) that her plea was improper. See ECF No. 1, pgs. 8-20; see also ECF No. 19, Lod. Doc. 2, pgs. 4-17. For the reasons discussed below, the Court finds Petitioner's arguments unconvincing and denies her petition.

The Sixth Amendment guarantees the effective assistance of counsel. The United States Supreme Court set forth the test for demonstrating ineffective assistance of counsel in Strickland v. Washington, 466 U.S. 668 (1984). First, a petitioner must show that, considering all the circumstances, counsel's performance fell below an objective standard of reasonableness. See id. at 688. To this end, petitioner must identify the acts or omissions that are alleged not to have been the result of reasonable professional judgment. See id. at 690. The federal court must then determine whether, in light of all the circumstances, the identified acts or omissions were outside the wide range of professional competent assistance. See id. In making this determination, however, there is a strong presumption "that counsel's conduct was within the wide range of reasonable assistance, and that he exercised acceptable professional judgment in all significant decisions made." Hughes v. Borg, 898 F.2d 695, 702 (9th Cir. 1990) (citing Strickland, 466 U.S. at 689).

Second, a petitioner must affirmatively prove prejudice. See Strickland, 466 U.S. at 693. Prejudice is found where "there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694. A reasonable probability is "a probability sufficient to undermine confidence in the outcome." Id.; see also Laboa v. Calderon, 224 F.3d 972, 981 (9th Cir. 2000). A reviewing court "need not

determine whether counsel's performance was deficient before examining the prejudice suffered by the defendant as a result of the alleged deficiencies . . . If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." Pizzuto v. Arave, 280 F.3d 949, 955 (9th Cir. 2002) (quoting Strickland, 466 U.S. at 697).

In reviewing and denying Petitioner's claims the state court wrote the following:

> The plea agreement in this case was extremely advantageous to petitioner. She went from facing a potential sentence of 15 to life or 25 to life to a determinate term of six years. By the time that she entered her plea, more than one witness could have testified that she was involved in a serious physical fight with the victim on the night of the murder. In these circumstances, it would have been wise for her to consider the possibility that she would be convicted of murder, if not as the perpetrator, then as an aider and abettor. The choice to enter the plea would have been reasonable, even if she did not think she was guilty.
>
> Nonetheless, petitioner has alleged that she is innocent and that if counsel had investigated further and had discovered that she had been illegally interrogated and illegally arrested, she would not have entered her plea. She has failed however, to state facts showing that her interrogation(s) were illegal or that her arrest was illegal.
>
> It is not clear that officers made false statements to her when interviewing her. Even if they had, however, petitioner has failed to show any other factors that could lead to a conclusion that she gave an involuntary statement. She was not denied counsel when counsel was requested or repeatedly questioned after having invoked a right to remain silent. She has not said that her physical needs were not met. She has not stated that questioning went on for long periods of time. She has not reported promises or threats.
>
> According to the probation report, the tip in this case stated that the attack occurred in the home of petitioner and her husband and that the victim's mouth had been taped shut during the attack. The tipster reported that petitioner had broken her hand during the fight and that she had been treated at a local hospital. The tipster also provided a correct recent address for petitioner and her husband. The tipster, therefore, provided details about the attack and an address that police could verify.
>
> This, in combination with other information previously collected, led officers to take petitioner in, to give her Miranda warnings and to question her. When officers did so, they had probable cause to believe petitioner had, at a minimum, assaulted the victim. In these circumstances, it was not illegal for officers to question petitioner.
>
> Petitioner also claimed that she was illegally arrested. The arrest occurred on the basis of an arrest warrant, which recited the facts of the case as they had developed to that point. The sealed affidavit includes statements from petitioner's housemate and family and does not depend on the anonymous

> tip reported by the probation report. There would have been no reason for counsel to challenge the warrant; it was not facially invalid.
>
> Petitioner also objects to statements in Officer Linke's investigatory report, but she has failed to show what effect the report had on her case. The court's file includes a preliminary hearing transcript but does not include investigatory reports from Officer Linke or any other officer.
>
> In summary, petitioner has failed to state facts showing that she was illegally questioned or illegally arrested or any information that would have caused her counsel to think that either of these might have occurred. She has shown no basis for an ineffective assistance claim.

ECF No. 19, Lod. Doc. 3, pgs. 3-4.

The Court finds that the state court's denial of Petitioner's claims was neither contrary to, nor based on an unreasonable application of, established law. Petitioner raises no contentions that the state court incorrectly applied established law, instead reiterating her prior allegations, in which she raises the issue of ineffective assistance of counsel as to several issues. See ECF No. 1, pgs. 8-20. In order to succeed in an ineffective assistance of counsel claim, Petitioner must show that her counsel's performance was deficient, and that she was prejudiced by the deficient performance. The Court finds that in each instance Petitioner's claims are unconvincing.

**1.    Arrest Warrant**

Petitioner contends that her arrest warrant should have been objected to by her attorney. Petitioner presents no evidence in relation to the arrest warrant, only making conclusory statements that the warrant was facially invalid. See ECF No. 1, pg. 8. As the state court emphasized, Petitioner's arrest warrant was not facially invalid and her attorney would have had no reason to challenge the warrant. See ECF No. 19 Lod. Doc. 3, pg. 4. It is within the bounds of reasonableness that counsel made a strategic decision not to challenge an arrest warrant that did not appear to have any defects and was not facially invalid. The Court finds that Petitioner did not receive ineffective assistance of counsel when her attorney did not object to the arrest warrant in this case.

///

///

### 2. **Probable Cause for Arrest**

Petitioner alleges that there was insufficient probable cause for her arrest, due to the use of an anonymous tip, and that her attorney should have objected on that basis. See ECF No. 1, pg. 9. The state court highlighted that the individual who provided the tip provided specific, verifiable details about both the incident and information related to the residence of Petitioner. See ECF No. 19 Lod. Doc. 3, pgs. 3-4. Further, the state court identified that the arrest was not solely made based on the anonymous tip, but also due to evidence related to the case previously collected by the detectives. Id. at 4. At the time officers arrested Petitioner, there was probable cause to support that she had at least assaulted the victim. Petitioner has offered no evidence to contradict any of these points. It is within the bounds of reasonableness that her attorney, knowing these facts, decided not to object to Petitioner's arrest on probable cause grounds. The Court finds that Petitioner did not receive ineffective assistance of counsel when her attorney did not object to her arrest lacking probable cause.

### 3. **Investigative Report Statements**

Petitioner also contends that her attorney should have objected to certain statements that were found in the investigative report of John Linke. See ECF No. 1, pg. 11. As noted by the state court, Petitioner does not provide any evidence to show what, if any, affect the statements found in John Linke's report had on her case. See ECF No. 19 Lod. Doc. 3, pg. 4. John Linke's report was not entered into evidence during the preliminary hearing and Petitioner's attorney would have no reason to object to statements not being entered into evidence during the preliminary hearing. John Linke did testify at the preliminary hearing. See ECF No. 19 Lod. Doc. 8, Preliminary Hearing Transcript, pgs. 334-357. However, Petitioner makes no contention that the statements during the preliminary hearing should have been objected to, nor any contention that her attorney's actions at the preliminary hearing relating to John Linke were unreasonable. Further, there is no indication that these statements within John Linke's report resulted in any prejudice of Petitioner, nor how her attorney's failure to object to them would have caused any prejudice in this case. The Court finds that Petitioner did not receive ineffective assistance of counsel when her attorney did not object to statements made in John Linke's

investigative report.

### 4. **Statements Made During Detention**

Petitioner asserts that she received ineffective assistance of counsel when her attorney did not object that she was improperly questioned, that she was only told that she was arrested after being interviewed, and was not given a proper Miranda[2] warning. See ECF No. 1, pgs. 13-15; see also ECF No. 19, Lod. Doc. 2, pgs. 9-12. As evidence in support of this assertion, Petitioner appears to cite to the investigative report of John Linke and a probation report, both of which she attached to her claim. See ECF No. 1, pgs. 28-48; see also ECF No. 19, Lod. Doc. 2, pgs. 9, 20-40. Petitioner appears to assert that the reports contain false statements, however Petitioner provides no evidence to support or verify her claims. See ECF No. 19, Lod. Doc. 2, pg. 9. Both the investigative report and the probation report state the Petitioner was informed of her arrest and issued Miranda warnings prior to being questioned. See ECF No. 1, pgs. 28, 41; see also ECF No. 19, Lod. Doc. 2, pgs. 20, 33. The state court identifies that according to the probation report provided by Petitioner, she was given a Miranda warning after she was arrested and prior to police questioning. See ECF 19, Lod. Doc. 3, pg. 4. With this information it was within the bounds of reasonableness that Petitioner's attorney did not object to the statements elicited during interrogation, as the statements were not improperly obtained. The Court finds that Petitioner did not receive ineffective assistance of counsel when her attorney did not object to statements made by Petitioner while in detention.

### 5. **Petitioner's Plea**

Petitioner also alleges that she received ineffective assistance of counsel when her attorney failed to object to her plea being improper. See ECF No. 1, pgs. 16. Petitioner makes broad claims that she was held for over twenty-four hours, that her plea was illegally obtained through coercive means, and that there was no probable cause in relation to her plea. Id. Petitioner also re-raises contentions that her arrest and detention were unconstitutional. Id.

///

///

---

[2] Miranda v. Arizona, 384 U.S. 436 (1966).

11

As discussed above, Petitioner's detention was not unconstitutional. There was probable cause for her arrest. Petitioner was informed that she was being placed under arrest and was given a Miranda warning prior to being interviewed.

In support of her contention that she was held for an excessive time Petitioner again refers to the investigative report of John Linke. See ECF No. 1, pgs. 16. The investigative report that Petitioner provided, which she appears to be referencing, states that petitioner was arrested at 10:04 a.m., taken to an interview room at the Sacramento Police Department at 10:25 a.m., given a Miranda warning and interviewed from 10:28 a.m. to 11:35 a.m., and taken to Sacramento County Main Jail, where she was booked at 12:04 p.m. Id. at 28-32. There is no indication that petitioner was held for an undue amount of time, and there would have been no reason for Petitioner's attorney to raise the length of time as an issue.

The state court concluded that Petitioner failed to show any evidence that her interrogation was coercive. See ECF No. 19, Lod. Doc. 3, pg. 3. Petitioner was not questioned for an overly long amount of time, she does not allege that her physical needs were not met, and there is no evidence to support that she was denied counsel when requested, nor is there any evidence that after asserting her right to remain silent she was repeatedly questioned. Id. Petitioner's attorney would have had no reason to object to the treatment that Petitioner experienced.

Petitioner additionally contends that her plea had no probable cause. See ECF No. 1, pg. 16. Petitioner stipulated that the preliminary hearing provided the factual basis for her plea. See ECF No. 19, Lod. Doc. 8, pgs. 7-8. Further, Petitioner only submitted her "no contest" plea after preliminary hearings where evidence was presented, and at the conclusion of which hearing a judge determined there was sufficient cause to believe that the Petitioner and her codefendant had committed the charged offense. See ECF No. 19, Lod. Doc. 8, pg. 423. Petitioner's attorney would not have had reason to prevent her from accepting a plea in this case. As the state court noted, Petitioner went from facing an indeterminate sentence of either fifteen or twenty-five years to life in prison to a determinate sentence of six years in prison. See ECF No. 19, Lod. Doc. 3, pg. 3. The state court further highlighted that multiple witnesses could testify to having seen

Petitioner in a serious, violent altercation with the victim on the night the murder occurred. Id. It is within the bounds of reason that, with the evidence presented and Petitioner's chances at trial uncertain, that Petitioner's counsel would not object to a plea agreement that would allow Petitioner a determinate six year sentence rather than the potential of being found guilty and facing an indeterminate sentence of fifteen or twenty-five years to life in prison.

The Court finds that Petitioner did not receive ineffective assistance of counsel when her attorney did not object to her plea agreement.

## IV.  CONCLUSION

Based on the foregoing, the Court concludes that Petitioner is not entitled to federal habeas corpus relief.

Pursuant to Rule 11(a) of the Federal Rules Governing Section 2254 Cases, the court has considered whether to issue a certificate of appealability.  Before petitioner can appeal this decision, a certificate of appealability must issue. See 28 U.S.C. § 2253(c); Fed. R. App. P. 22(b).  Where the petition is denied on the merits, a certificate of appealability may issue under 28 U.S.C. § 2253 "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2).  The court must either issue a certificate of appealability indicating which issues satisfy the required showing or must state the reasons why such a certificate should not issue. See Fed. R. App. P. 22(b).  Where the petition is dismissed on procedural grounds, a certificate of appealability "should issue if the prisoner can show:  (1) 'that jurists of reason would find it debatable whether the district court was correct in its procedural ruling'; and (2) 'that jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right.'" Morris v. Woodford, 229 F.3d 775, 780 (9th Cir. 2000) (quoting Slack v. McDaniel, 529 U.S. 473, 120 S.Ct. 1595, 1604 (2000)).  For the reasons stated herein, the court finds that issuance of a certificate of appealability is not warranted in this case.

/ / /

/ / /

Accordingly, IT IS HEREBY ORDERED that:

1. Petitioner's petition for a writ of habeas corpus (ECF No. 1) is denied;
2. The Court declines to issue a certificate of appealability; and
3. The Clerk of the Court is directed to enter judgment and close this file.

Dated:  December 3, 2020

_____
DENNIS M. COTA
UNITED STATES MAGISTRATE JUDGE